**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JULIO CESAR ORTEGA,

      Defendant - Appellant.

No. 06-7016
(D.C. No. 05-CR-52-P)
(E. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

Julio Cesar Ortega appeals his conviction for Possession with Intent to

Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A)(viii). Ortega's counsel moves for leave to withdraw in a brief filed

pursuant to Anders v. California, 386 U.S. 738 (1967). We **AFFIRM** Ortega's

conviction, **DISMISS** the appeal, and **GRANT** counsel's motion to withdraw.

On May 3, 2005, Oklahoma Highway Patrol Trooper Cody Hyde stopped

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec.
1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

Ortega and his passenger Fernando Hernandez in Sequoyah County, Oklahoma as they were driving eastbound on Interstate 40. Hyde initiated the stop because the vehicle was traveling at 76 miles per hour, six miles above the posted speed limit of 70 miles per hour. During the stop, Hyde observed that Ortega and Hernandez exhibited signs of nervousness and provided differing accounts of their travel plans. Hyde asked Ortega for permission to search the vehicle, and Ortega consented.

Hyde's inspection led to the discovery of approximately 815 grams of methamphetamine behind the glove box of the vehicle. Both Ortega and Hernandez were then placed under arrest. After Ortega realized he was being arrested, he began to argue that the narcotics were not his and that he was working as an informant for the United States Postal Inspection Service ("Postal Inspection Service"). Ortega told Hyde to contact Dan Brubaker, a Postal Inspector in Phoenix, Arizona, for whom Ortega claimed to be working.

On June 16, 2005, both Ortega and Hernandez were indicted on one count of Possession with Intent to Distribute Methamphetamine. On July 1, 2005, Ortega filed a brief under seal, raising a public authority defense. Ortega contended that he was acting under a confidential informant agreement with the Postal Inspection Service in Arizona at the time he was arrested. He identified Postal Inspectors Dan Brubaker and Raul Vargus as contact persons.

At trial, Brubaker testified that he used Ortega as a confidential informant in his investigations of mail theft and identity theft for the Arizona Postal Inspection Service. Although Brubaker acknowledged that methamphetamine was often involved in mail theft schemes, he averred that he instructed Ortega not to take possession of controlled dangerous substances. On one occasion, Ortega brought Brubaker roughly 3.3 grams of methamphetamine, purportedly obtained in the course of Ortega's inside dealings with a mail theft ring. Brubaker immediately told Ortega that the drugs were "meaningless" to his investigations and warned Ortega not to receive drugs without the Postal Inspection Service's "prior firsthand knowledge." Brubaker informed Ortega that if "he was arrested with methamphetamines on his person that [Brubaker] didn't have prior knowledge to [sic] . . . there was nothing [Brubaker] could do" to help Ortega avoid criminal prosecution for drug possession.

According to Brubaker, Ortega called him in April or May 2005 and informed him that Hernandez asked for Ortega's assistance in transporting a "load of identifications and drugs" from Arizona to Arkansas. Brubaker testified that he told Ortega not to take this trip. However, later in that same telephone conversation, Brubaker asked Ortega to inform him if Ortega discovered the location of the "load" before it left Arizona. Brubaker had no further contact with Ortega prior to his arrest.

Raul Vargas, Brubaker's supervisor, also testified at trial. He addressed the scope of Ortega's confidential informant agreement, which explicitly barred activity without the prior approval of the Postal Inspection Service. The agreement, read by Vargas at trial, states that "any undercover related activity taken without the express prior approval of the Inspection Service places [the informant] outside [the] agreement and subjects [the informant] to any applicable criminal penalties or civil liabilities." A portion of the agreement also prohibits the receipt of controlled substances. Vargas asserted that he discussed each provision of the agreement with Ortega.

Ortega testified that he believed he undertook the trip under the authority of Brubaker. According to his testimony, he informed Brubaker in May that Hernandez was planning a trip to Arkansas to transport a "load" of "papers, I.D.'s, checks," and drugs. Although Ortega admitted that Brubaker told him not to take the trip, he averred that Brubaker asked him to find out where the "I.D.'s" were located. Ortega claimed that neither Brubaker nor Vargas told him not to take drugs into his possession and asserted that both men lied in their trial testimony on this issue.

A jury found Ortega guilty, and the district court sentenced him to 151 months' imprisonment, at the bottom of his Guidelines range. Ortega now appeals his conviction.

If counsel conscientiously examines a case and determines that any appeal would be wholly frivolous, counsel may so advise the court and request permission to withdraw. Anders, 386 U.S. at 744. Counsel must submit a brief to both the appellate court and the client pointing to anything in the record that would potentially present an appealable issue. The client may then choose to offer any argument to the court. If, upon completely examining the record, the court determines that the appeal is in fact frivolous, it may grant counsel's request to withdraw and dismiss the appeal. Id. In the present case, counsel provided Ortega with a copy of his appellate brief, and Ortega has not filed a pro se brief raising any additional argument.

Counsel's Anders brief identifies one potentially appealable issue: insufficiency of the evidence at trial. In reviewing the sufficiency of the evidence to support a conviction, "we review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt." United States v. Colonna, 360 F.3d 1169, 1178 (10th Cir. 2004). In a case involving a public authority defense, we will uphold the jury verdict if a rational juror could find, beyond a reasonable doubt, that the defendant did not reasonably believe he was acting as an authorized agent of the Government. See United States v. Apperson, 441 F.3d 1162, 1205 (10th Cir. 2006). Brubaker

stated under oath that he explicitly told Ortega not to take the trip to Arizona, and Ortega admitted that he received that instruction. Vargas read into evidence Ortega's confidential informant agreement, which states that any action taken without the express prior approval of the Postal Inspection Service subjects Ortega to criminal penalties. Moreover, both Brubaker and Vargas testified that they instructed Ortega not to take possession of illegal drugs. Although Ortega contended that both men lied about giving this instruction, a reasonable jury could believe the Inspectors' testimony over Ortega's. The evidence at trial was thus sufficient to support the jury's verdict rejecting Ortega's public authority defense.

For the reasons stated above, we **AFFIRM** Ortega's convictions, **DISMISS** the appeal, and **GRANT** counsel's motion to withdraw.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

-6-